## *MATHILDA M. CHILDERS, wife of Patton, *v.* JOHNSON and SMITH et al.

A suit for a separation of property and the dissolution of the community, will be sustained where the pecuniary rights of the wife, whether springing from her dotal or paraphernal estate, are put in jeopardy by the embarrassed condition of the husband's affairs.

Where the wife has obtained a decree of separation, and has renounced the community, she becomes a debtor to the community for the value of the improvements put upon her separate property, when she chooses to keep those improvements as the owner of the soil. C. C. 2377.

In estimating the value of the improvements made upon the wife's separate property upon the dissolution of the community, the proper standard is their value at the time of the decree, and not the original cost.

Where the wife, at the date of the marriage, owned female slaves, the children of those slaves born after, belong to the wife, and not to the community. C. C. 183, 480, 491, 492, 525, 536, 539. C. C. 537, 2371, 2375, 2376, 2363, 2351.

The child of a paraphernal slave is paraphernal.

The wife cannot be charged, as the debtor of the community, for the necessary expenses of slaves which were the paraphernal property of the wife. C. C. 564.

The wife is the debtor of the community for the payment out of the community funds of debts owed by her before the marriage. C. C. 2372.

APPEAL from the District Court of Carroll, *Snyder,* J. *Stacy* and *Sparrow,* for plaintiff. *H. Short,* for defendants. The judgment of the court was pronounced by

SLIDELL, J. The plaintiff claims a separation of property; renounces the community heretofore existing between herself and husband; demands the administration of her paraphernal lands and slaves, and their increase; and a judgment against her husband for the amount of paraphernal monies received by him, &c.

Several creditors intervened and opposed the wife's claims; they are appellants from the judgment rendered by the district judge. The points presented by their counsel, will be considered in the order in which they were argued.

I. The intervenors contend, that the facts presented by the evidence did not warrant a judgment putting an end to the community, and granting the wife a separation of property.

* This opinion was rendered April, 1850.

The code declares, that the wife may, during the marriage, petition against the husband for a separation of property, whenever her dowry is in danger, owing to the mismanagement of her husband, or otherwise; or, when the disorder of his affairs induces her to believe that his estate may not be sufficient to meet her rights and claims. Art. 2399, C. C. In the succeeding article, it is said, the neglect to reinvest the dotal effects of the wife, in cases where the law directs such reinvestment, is also sufficient cause for the wife to demand a separation of property.

These provisions of law are sufficiently broad to cover a case where the pecuniary rights of the wife, whether springing from her dotal or paraphernal estate, are put in jeopardy by the embarrassed condition of the husband's affairs. The evidence before us presents such a case. The plaintiff, at the time of her marriage, was the owner of a large unencumbered estate, consisting of lands, slaves, and sums of money due. Her husband has collected monies thus due—has received the price of portions of her estate sold during the marriage, and is a debtor to third persons for a very large amount, much of which is in the form of judgments. His means, compared with his liabilities, are so small, as fully to justify the declarations of witnesses, that he is insolvent. It is said, that the existence of the community into which the wife entered by her marriage, and which enjoyed the revenues of her large estate, gave her husband, the head of that community, credit with the public, and debts were contracted on the faith of its continuance. This is partially true. But those who gave him credit, did so with a knowledge, that the wife, when she entered into the conjugal partnership, reserved to herself, under the laws regulating the marriage relation, the right of resuming the administration of her paraphernal estate, and of demanding a separation of property, if her husband's affairs should at any time become embarrassed, and her interests be put in jeopardy. They cannot, therefore, complain of the exercise, on her part, of a legal right.

II. It is contended that injustice has been done to them in relation to the estimate of the improvements made upon her lands during the existence of the community. The rule controlling this subject, is contained in the article of the C. C. 23 and 77. When the hereditary property of either the husband or the wife has been increased or improved during the marriage, the other spouse, or his or her heirs, shall be entitled to the reward of one-half of the value of the increase or ameliorations, if it be proved that the increase or ameliorations be the result of the common labor, expense, or industry; but there shall be no reward due, if it be proved that the increase is due only to the ordinary course of things, to the rise in the value of property, or to the chances of trade. Under the spirit of this rule, the wife, who resumes the administration of her separate property, obtains a decree of separation and renounces the community, becomes the debtor to the community for the amount in which the value of her estate, at the date of the dissolution, is enhanced, by reason of the improvements, when she chooses to keep those improvements as the owner of the soil. *Waggaman* v. *Zacharie*, 8 R. R. 187. *Babin* v. *Nolan*, 6 R. R. 513. With regard to the estimation of the enhanced value, there is a conflict in the opinions of the witnesses. The district judge appears to have acted upon an average of their estimates. Upon a review of the evidence, we are not able to say that his conclusion has not done substantial justice between the parties. The improvements may have cost mor' than the amount assessed by the judge. But that, as we said in *Depas* v. *Rie* is not the proper standard. They have depreciated by time and use, and t district judge was right in directing his attention to the fair enhancement of estate, by reason of the improvements, at the date of his decree.

CHILDERS
v.
JOHNSON.

III. It is said, injustice has been done to the creditors of the community, in giving the plaintiff, as owner, the children born, since the date of her marriage, from her female slaves. We are not aware that this question, under the Code of 1825, as to the increase of paraphernal slaves, has been the subject of any reported judicial decisions by our predecessors or this court. We do not, however, consider the point as one of serious difficulty. In its solution, it is proper to notice all the articles of the code which have been cited, as bearing upon the question.

The article 183 declares, that children born of a mother, who is, at the time, a slave, follow the condition of their mother; they are consequently slaves, and belong to the owner of their mother.

The second title of the second book of the code, is devoted in its first chapter to the enunciation of the "General Principles" which control the subject of ownership. It is defined as the right by which a thing belongs to some one in particular, to the exclusion of all other persons. It is recognized as vested in him who has the domain direct, and not in him who has a mere beneficiary right in it, *le domaine utile*. It is considered as a perfect ownership when it is perpetual, and when the thing, which is the subject of it, is unencumbered with any charges towards any other person than the owners, it is considered imperfect, when it is to terminate at a certain time, or on a condition; or if the thing, which is the subject of it, being an immovable, is charged with any real right in favor of a third person, as an usufruct, use, or service, the right of ownership necessarily supposes a person in whom this right exists, and it is of its essence that it cannot exist in two persons for the whole of the same thing. The ownership and the possession of a thing are entirely distinct matters. The right of ownership subsists independently of the exercise of it. Civil Code, art. 480, *et seq.*

Having enunciated these general principles, the code then goes on to enumerate those rights which are incidental to the right of ownership, or flow as consequences from it. It declares, that fruits of the earth, whether spontaneous or cultivated, civil fruits; that is, the revenues yielded by property from the operation of law or by agreement; children of slaves and the young of animals, belong to the proprietor by right of accession. And in the next article, the rule is reiterated; the children of slaves and the young of animals, belong to the proprietor of them by right of accession. Art. 491, 492.

In a subsequent title, the rules applicable to cases of imperfect ownership are given, and the first chapter is devoted to the subject of usufruct. Its provisions are particularly important in the present inquiry, in consequence of the great analogy between the relations of a usufructuary towards the owner, and the community towards the wife. This analogy cannot be disputed, when we bring the rights of the community and of the usufructuary, as defined in the code, into juxtaposition; and has been frequently recognized, See Duranton, vol. 14, p. 106. Delvincourt and Proudhon, cited by Toullier, vol. 12, p. 133. *Bradish* v. *Johnson*, 1836, unreported.

Usufruct, says the article 525, is the right of enjoying a thing, the property of which is vested in another, and to draw from the same all the profit, utility and advantages *(commodité)* which it may produce, provided it be without altering the substance of the thing. It is of two kinds, perfect and imperfect; the former is of things which the usufructuary can enjoy without changing their substance, though their substance may be diminished or deteriorated naturally by time, or by the use to which they are applied; as a house, a piece of land,

slaves. Perfect usufruct does not transfer to the usufructuary the property of things subject to the usufruct; the usufructuary is bound to use them, as a prudent administrator would do, to preserve them as much as possible. Having thus defined the general character of a usufruct, the code proceeds to state, in detail, the rights which belong to the usufructuary, and those which are reserved to the owners. All kinds of fruit, natural, cultivated or civil, produced during the existence of the usufruct, by the things subject to it, with the exception of the children of slaves, belong to the usufructuary. Art. 536. And again, the children of slaves subject to usufruct, who are born during its duration, belong to the owner. The usufructuary has only the enjoyment of their labor and services. Art. 539.

This exception with regard to the increase of slaves, is not a novelty originating with the framers of our codes. It was a rule of the Roman and of the Spanish laws. In pecudum fructû etiam fœtus est, siculi lac, pilus, et lana, itaque agni, hœdi, et vituli, et equuli, et suculi, statim naturali jure dominii fructuarii sunt. Partus vero ancillæ in fructû non est; itaque ad dominum proprietatis pertinet. Inst. lib. 2, tit. 1, § 37. See also Puffendorf Droit de la Nature et des Gens., book 4, chap. 8, p. 463. This author observes: "Les Lois Romaines exceptent pourtant les enfans d'une femme esclave; dont la raison est à mon avis, que l'usufruit des esclaves avait été établi en vue du profit que l'on retire de leur travail, et non pas pour celui qui revient des enfans qu'ils peuvent mettre au monde." So the Partidas : "When a man has a right to the usufruct or labor of the slave of another, he will acquire all the slave gains by his manual labor, or by means of the funds belonging to the usufructuary. But the gains made by the slave, from what was given or left him by will, belong exclusively to his master; unless the donation or legacy was made with the intention that they should belong to the usufructuary, or he who enjoyed the use of the slave, in which case they will acquire the property therein. We likewise say, that notwithstanding a child be born of a slave, of whom one had the usufruct, while the mother was in the power of the usufructuary, such child will belong to the master of the slave, unless he had expressly agreed that the usufructuary should have it." Partida 3, tit. 31, law 23. It is true, that our code, in article 537, classes slaves among natural fruits, and in this respect differ from the Roman and the Spanish law; but the difference is rather one of terms than of substance, for they all agree in treating the issue of slaves as belonging to the owners, and not to the usufructuary.

Keeping in view the general principles thus clearly recognized by the code, we proceed to notice, briefly, those articles which treat specially of the community; and which are relied upon by the intervenors, as constituting the increase of the wife's slaves, the property of the conjugal partnership.

This partnership or community consists of the profits of all the effects *(des fruits de tous les biens,)* of which the husband has the administration and enjoyment, either of right or in fact, of the produce of the reciprocal industry and labor of both husband and wife, and of the estates which they may acquire during the marriage, either by donations made jointly to them both, or by purchase, or in any other similar way, even although the purchase be only in the name of one of the two, and not of both; because, in that case, the period of time when the purchase is made is alone attended to, and not the person who made the purchase. Art. 2371.

CHILDERS
v
JOHNSON.

The effects which compose the partnership or community of gains, are divided into two equal portions between the husband and the wife, or between their heirs at the dissolution of the marriage; and it is the same with respect to the profits arising from the effects *(des fruits produites par les biens,)* which both husband and wife brought reciprocally in marriage, and which have been administered by the husband, or by husband and wife conjointly; although, what has been thus brought in marriage by either the husband or the wife, be more considerable than what has been brought by the other, or even, although one of the two did not bring any at all.   2375.

The fruits hanging by the roots on the hereditary or proper lands of either the husband or wife, at the time of the dissolution of the marriage, are equally divided between husband and wife, or their heirs.   It is the same with respect to the young of cattle yet in gestation; but the fruits of the paraphernal effects, of which the wife reserved to herself the enjoyment, are excepted from the rule contained in this article.   2376.

In the article 2363, it is said, when the paraphernal property is administered by the husband, or by him and the wife indifferently, the fruits of this property, whether natural, civil, or the result of labor, belong to the conjugal partnership, if there exist a community of gains.   If there do not, each party enjoys, as he chooses, that which comes to his hands; but the fruits and revenues which are existing at the dissolution of the marriage, belong to the owner of the things which produce them.

The argument deduced from these provisions by the intervenors, was in substance this:   The fruits produced by the separate property, are given to the community by these articles.   By the article 537, the children of slaves are designated as fruits.   Such children, therefore, belong to the community, and not to the owner of the mother.

The objection, however, to this argument is, that it brings the provisions concerning the community into conflict with the letter and spirit of other articles of the code, where slaves are mentioned.   It conflicts with the general rule laid down in art. 183, that such children follow the condition of the mother, and belong to her owner.   It conflicts with the same general rule, as reiterated in the article 491.   It conflicts with the exceptions, expressly declared by article 536, upon the analogous subject of usufruct, and repeated in the article 539.   It conflicts with the rules and principles of the Roman law, which is the basis of our jurisprudence.   It conflicts with the rule expressed in article 2351, which, in case of dotal slaves, binds the husband to restore the living children which may have been born from such slaves.

It is a sound rule of interpretation, in construing an article of the code, with reference to a subject matter, to take into view the general system of legislation upon the subject matter contained in the same work; and where a provision of the code is invoked in derogation of the common rule regulating the subject matter, the intentions so to derogate should be clear and beyond reasonable doubt.   If an interpretation can be given to the particular article, which, without doing violence to its terms, will make it harmonize with the general rules and the other provisions of the code regulating the subject matter, such interpretation should be adopted.   In the interpretation of contracts, it is an undisputed maxim: *Ex antecedentibus et consequentibus fit optimas interpretatio.* The spirit of that rule may be considered fairly applicable to the interpretations of our codes.

When, therefore, in the articles 2363, 2371 and 2375 the words *fruits* or *profits* are used, it seems proper to consider them as applicable to fruits in the ordinary legal sense of that term, and as not comprehending the issue of slaves; which, as we have already stated, were not considered fruits in the Roman law, from which our jurisprudence is so largely derived; nor in the Spanish laws, by which we were once governed : which were, it is true, in one article of the code classed as natural fruits, but in so many others are specially excepted from the legal consequences which would attach to them in that character. We see no impropriety, under all the circumstances, in narrowing and restraining this general expression used in the articles 2363, 2371 and 2375, any more than in narrowing and restraining a covenant made in large and general terms, where there has appeared something to connect it with a restrictive covenant in the same instrument.

Again, if the children of slaves, so repeatedly excepted from the operations of the rules applicable to fruits, are to be comprehended under the naked expression, *fruits*, in the articles 2371 and 2375, why is it, that things of an inferior dignity are the subject of special enumeration in article 2376 ? In this latter connection, it is proper also to bear in mind, the declared policy of our State, touching the separation of mother and child. The statute of 1806 has humanely enacted, that "every person is expressly prohibited from selling, separate from their mothers, the children who shall not have attained the full age of ten years." Would we not violate the policy of this statute, by giving the mothers to the plaintiff, and the issue to the community ? As we said in *Boner* v. *Mahle*, " if the issue are to be treated as fruits, still, as the law forbids them to be separated from the mother until the age of ten years, we cannot liken them to gathered fruits until they have attained that age." 3d Ann. 608.

Our conclusions, therefore, after a diligent search for the true intention of the framers of the code is, that the child of a paraphernal female slave is paraphernal. In this conclusion, we are sustained by an opinion of our predecessors, prepared by *Matthews*, J. It is true, that opinion did not become final in the cause ; there was an application for re-hearing, and the cause was not finally acted upon. But the opinion upon the point now before us, is entitled to consideration.*

The case of *Gale* v. *Davis*, 4 M. R. 650, has been cited by the intervenors as deciding the reverse. That case seems to have originated prior to 1808 ; and it is to be observed, that no authorities are quoted in support of the opinions. In *Ducrest's Heirs* v. *Bijeau's Estate*, 8 N. S., 198, the court said, " the increase

---

*The following is the case referred to in the decision : *L. Bradish, Tutrix, &c.* v. *Johnson Under-Tutor of George Bradish.* Appeal from the Court of Probates of Plaquemines. This case originates in an opposition made by the under-tutor of George Bradish, to the homologation of an inventory made by the tutrix, in which the offspring or young of certain slaves, admitted to have been the separate property of the deceased husband, &c., before marriage, was attempted to be held as community property. The decision of the court below was against the widow in community, and she appealed. The case presents a question of law, only. Both the Old and the New Codes are silent' as to the property in the increase of slaves, constituting the *bienspropres* of either husband or wife, produced during the existence of the marriage. This case presents the question, whether slaves, thus born, belong to the community of acquets and gains, or must be considered as constituting a part of the separate property of either husband or wife, according as the original stock may have been the separate property of one or the other; and, at the dissolution of the marriage, descend to the heirs of either, as the case may be. We have stated that our laws have not expressly provided for this case ; but in relation to slaves held in usufruct (which is somewhat analogous

of slaves and animals, by the early laws of Spain, belonged to the spouse who brought them into marriage. By the latter statute, however, and the modern jurisprudence of that country, the produce of these things are considered to result, as much from the care and solicitude of the possessors, as from nature; and that, as such, they form a part of the gains which are to be divided between the husband and wife." In support of this opinion, the court refers to Febrero, part 2, lib. 1, cap. 4, § 1, No. 24; ib. part 2, lib. 1, cap. 5, §5, No. 44.

It seems to us questionable, whether the Spanish law accords with the broad proposition laid down by the court. In the passage of Febrero, just cited in that case, we find the author justifying the rule by the consideration, that if the mother slave died, its price would be reimbursed by the community; and therefore the equitable rule would apply, *qui sentet commodum sentire debet et onus;* or as Febrero expresses it: *quien esta al provicho debe estar al daño.* In the 20th law of the title 11, Partida 4, it is said: "As it sometimes happens, that women give female slaves in dowry to their husbands, we shall therefore speak of them in this place; and we say, that if the wife give a female slave to her husband, appraising her value at the time, and the husband promises to give her the amount of the appraisement of such slave, when the marriage comes to be dissolved by death, or a judgment of the court, in that case, the profit or loss happening on account of the slave, will be for the husband. And so, if the slave should have children, they will also belong to the husband; but if the husband take upon himself the risk of the decrease of value only of the slave, and not of her death, *or the risk of her death, and not of the decrease of the value,* in that case, although the slave had been appraised, the child or children born of her, will not belong to the husband, but to the wife; and if the wife had not given the slave to her husband, with the appraisement of her value, then the profit or loss arising from such slave, will be for the wife, and not the husband."

Again, in the 25th law of the same title, under the head, "what it is necessary for the husband to do, that he may acquire the fruits of the dowry of his wife," we find the following: "Three things are necessary for the husband, in order that he may acquire the fruits of the dowry given him by his wife. The first is, that the marriage be contracted; the second, that he be put in possession of the dowry; the third, that he sustain the burden of the marriage, in supplying his own wants and those of his wife, children and the rest of the family. These three things concurring in favor of the husband, he ought to have the fruits of the dowry given to him by his wife, whether its value had been appraised or not, save what is said in the law, which spoke of the children of a

---

to such as are held and used for the common benefit of the matrimonial partners,) our laws explicitly declare, that the increase belongs to the owner, and not to the usufructuary. See *Old Civil Code,* page 112, art. 12; and the *New Code,* art. 539.

The counsel for the appellant has stated, in his points, that according to the Old Civil Code, and the Spanish law, which govern this case, the increase of slaves, born during marriage, constitute a part of the matrimonial acquets and gains; and that this court has so decided. According to our researches, we believe neither proposition to be true; they are entirely gratuitous; unsupported by any citation from the cases heretofore adjudged, or from any Spanish authority. The only decision that we have discovered having any relation to the present question, may be found in 10 M. R. 188, *et seq.,* and the doctrine there laid down, is directly contrary to that assumed on the part of the appellant. It will be seen, also, by reference to the Partida, 4, 11, 20, and the commentary of Gregorie Lopez, that the assertion of her counsel in respect to the laws of Spain, is without foundation, at least so far as we have been able to find out.

It is therefore ordered, that the judgment of the court of probates be affirmed, with costs.

slave which had been given in dowry, when it is said they ought not to belong to the husband, unless he had taken upon himself the risk of the deterioration and death of the slave ; nor ought the husband to have the gains acquired by that or any other slave given to him by his wife in dowry, if such gains arise from a donation made to the slave by any one, or from a legacy left to him by will; but whatever the slave may acquire by manual labor, or with the money of the husband, such gains as these will belong to the husband, and not to the wife ; and what we here say of slaves, applies where the husband had not taken them with an appraisement of value, nor had taken upon himself the risk of their deterioration and death.'' Moreau and Carleton's Partidas, vol. 1, 527, 533. But, whatever may have been the rule under the late Spanish laws, we are not aware of any provision in our codes, either of 1808 or 1825, which would entitle the wife to be reimbursed by the community, the value of her paraphernal slave dying during its existence. See also *Frederic* v. *Frederic*, 10 M. R., 192.

IV. It is contended, that if the increase of the slaves be not community property, then Mrs. Patton is bound to pay the expense which they have been to the community. We find no express warrant for this in the code ; and if we consult, by analogy, its provisions on the subject of usufruct, they are against the pretension. It is the duty of the usufructuary to keep (conserver) the things of which he has the usufruct, and to take the same care of them as a prudent owner does of what belongs to him; he is accordingly answerable for such losses as proceed from his fraud, default or neglect. Art. 560. The usufructuary is liable to all the necessary expenses for the preservation and working of the estate, subject to the usufruct; and if slaves form a part of them, he must provide for their support and clothing, for their medical attendance in sickness, and the just and necessary expenses of their children. Art. 564.

V. Two thousand dollars due by Mrs. Patton before marriage, and twenty-five hundred dollars due by Mr. Patton before his marriage, have been paid by the community. The judge below refused to charge the plaintiff with the item of two thousand dollars. In this, we think, there was error. It arises from not distinguishing the community, the conjugal partnership, from the persons who compose it. This partnership, the intervenors, who are creditors of the community, have a right to consider as a legal entity ; like other partnerships, it must be contemplated as an ideal being, *être moral*, distinct from the persons who compose it, having its rights and its obligations, its assets and its liabilities, its debtors and its creditors. Mrs. Patton is not the debtor of her husband for the $2000 expended for her benefit. She is the debtor of the community. She owed this debt before her marriage. The community derived no benefit from its creation. Instead of paying it with her own money, it has been paid with money of the community. *Eatenus locuplibior facta est*, *quatenus precuniæ propriæ pepucit*. Is she permitted thus to enrich herself, at the expense of the community, and of *bonâ fide* creditors of that community? Clearly not. This results from that general principle applicable to all partnerships, which is, that a partner must account to the partnership for what he has drawn from it for his individual business and advantage. Pothier Communauté, No. 206, 623. Such is also the spirit of art. 2372, C. C. The debts contracted during the marriage, enter into the partnership or community of gains, and must be acquitted out of the common fund, whilst the debts of both husband and wife, anterior to the marriage, must be acquitted out of their own personal and individual effects. See also Duranton, vol 14, 106, 454, *et seq.* *Glenn* v. *Elam*, 3d Ann., 615.

It is therefore decreed, that the judgment of the district court be so amended, as that, instead of the monied balance of $962 44 adjudged in said judgment in favor of said plaintiff, she be adjudged to be indebted to the said community in a monied balance of $1037 60, with interest from the date of this decree; said amendment being the result of charging the said plaintiff, in favor of the community, with the sum of $2000, paid by said community for the separate debt of said plaintiff; and that the said sum of $1037 60, and interest, be brought into court for the purpose of distribution among the said intervenors, according to law, the rights of said intervenors, respectively, upon said fund of $1037 60, being left open for contestation between themselves and the said Thomas R. Patton. And it is further decreed, that the judgment of the district court, so amended, be affirmed, and the costs of this appeal to be paid by the said plaintiff.