259 So.2d 454 (1972)
Margie Jones OWENS, Plaintiff-Appellee,
v.
Otto M. OWENS, Sr., Defendant-Appellant.
No. 3743.
Court of Appeal of Louisiana, Third Circuit.
March 16, 1972.
Dissenting Opinion March 27, 1972.
*455 Watson, Murchison, Crews & Arthur by William P. Crews, Jr., Natchitoches, for defendant-appellant.
Makar & Whitaker by John Makar, Natchitoches, for plaintiff-appellee.
Before FRUGE, SAVOY and HOOD, JJ.
SAVOY, Judge.
This appeal involves an accounting of properties owned by the litigants at the time the community of acquets and gains previously existing between them was dissolved by a judgment of divorce in the trial court on May 5, 1970. At the time of the parties' marriage on October 8, 1964, *456 plaintiff owned a house on Jefferson Street in Natchitoches, Louisiana, in indivision with her four children of her marriage of William Jones. Defendant brought with him as his separate property into the marriage, $9,000.00 cash, and a 50-acre tract of land which he had owned for some 50 years.
The following occurred during the existence of the community of acquets and gains:
(1) Plaintiff and defendant lived in the home on Jefferson Street and expended community funds to improve same;
(2) On October 26, 1964, Earl Jones, one of plaintiff's children by her marriage to William Jones, deeded his undivided (1/8th) interest in the home to plaintiff without any declaration in the deed that plaintiff was purchasing the interest with her separate and paraphernal funds under her separate control;
(3) On July 3, 1968, defendant deeded his 50-acre tract of land to his brother, Dewitt Owens, who soon thereafter died. Subsequently, on August 23, 1968, Mrs. Jessie Ball and Mrs. Minnie Smith, sisters to both defendant and Dewitt Owens, deeded their interest in the 50-acre tract (which they allegedly acquired by inheritance from Dewitt Owens) to defendant with no recitation that the property was being acquired by defendant with his own separate funds and for his separate estate; and
(4) Defendant transferred the $9,000.00 into a time deposit certificate naming Mr. and Mrs. Otto Owens as the persons entitled to same. Prior to the dissolution of the community, defendant withdrew the funds from the account and allegedly spent same on medical and living expenses.
A trial on the merits resulted in a judgment decreeing that defendant's claim against the plaintiff's separate property for enhancement be denied; that plaintiff was recognized as the owner of an undivided 7/24ths interest in the 50 acres deeded back to defendant; that defendant did not acquire any interest in plaintiff's home by the deed to plaintiff from her son; that the $9,000.00 was the separate property of the defendant; that plaintiff's attorney's fees would be set at $350.00; and, that an automobile belonged to the community. In addition, the trial court specifically set out additional items as community property and separate property, but we are not concerned with them on this appeal.
Defendant appealed contending that: (1) the trial court erred in not allowing defendant to recover one-half of the enhanced value of plaintiff's home when the enhancement occurred through expenditure of community funds; (2) the trial court erred in taking cognizance of an alleged correction deed from plaintiff's son to her which was not included in the record, and thus denying defendant an undivided 1/16th interest in the home on Jefferson Street; and (3) the trial court erred in holding that plaintiff acquired an interest in the 50-acre tract when plaintiff herself filed affidavits showing the transaction to be a simulation rather than an actual sale.
Plaintiff answered the appeal contending that the judgment should be amended to recognize plaintiff as the owner of onehalf of the $9,000.00 deposited into a joint account by defendant. She further contends that the judgment should be amended to delete the automobile from the community, and that her attorney's fees should be increased substantially.
Plaintiff's claim to have the automobile declared to be her separate rather than community property as declared by the trial court must fail. The automobile was purchased during the existence of the community of acquets and gains, was presumed to be community property and was community property in the absence of evidence submitted to overcome the presumption. Neither of the parties on the trial of the case could verify or substantiate many of the numerous transactions present in the checking accounts. A review of the record *457 shows that plaintiff failed to carry the burden of proof imposed upon her.
Counsel for plaintiff contends that the $9,000.00 brought into the second marriage by defendant should be considered community because it was commingled with community funds and because plaintiff earned most of the money used to run the household. We are in accord with the trial court on this item and hold the $9,000.00 to be the separate property of defendant. There is no evidence to show that there was ever any commingling with any community assets, and on the contrary, it appears that the funds never lost their identity. The most that can be said is that defendant placed the money in time deposit certificates in the name of himself and plaintiff. Under Articles 1536 and 1538 of the Civil Code, and the rationale of the case of Basco v. Central Bank & Trust Company, 231 So.2d 425 (La.App. 3 Cir. 1970) and cases therein cited, there was no donation by an act passed before a notary and two witnesses.
The next issue involves the transfer by defendant of his 50-acre tract of land to his brother, and the subsequent transfer of interests in this land to defendant by his two sisters when his brother died soon after the land was placed in the brother's name. On July 3, 1968, defendant executed a cash deed to his brother, Dewitt Owens, for $100.00 and other valuable consideration, wherein he transferred the 50-acre tract which he had owned since 1920. on August 23, 1968, after Dewitt Owens had passed away, defendant's two sisters, Mrs. Jessie Ball and Mrs. Minnie Smith, executed what is styled a cash sale deed to defendant conveying all of their interest in the 50-acre tract for $100.00 ($50.00 to each vendor) and other valuable consideration. Upon the trial of the case plaintiff introduced an affidavit by defendant claiming that the transfer to Dewitt was a simulation for convenience sake with no money being paid, and plaintiff also introduced affidavits by Mrs. Ball and Mrs. Smith showing that defendant paid no consideration to his sisters, and that they executed the alleged deed to defendant to reconvey the property to defendant.
The general rule regarding the purchase of immovable property by a husband during the existence of the community is stated in Hollier v. Fontenot, 216 So.2d 842 (La.App. 3 Cir. 1968), as follows:
"In order to preserve the title in the separate estate of the husband, it is necessary to recite two things in the deed: First, that the price is paid with the separate funds of the husband; and, second, that it is the husband's intention to acquire the property for the benefit of his separate estate, or words to that effect. If the deed does not contain these two recitations, then the property is legally presumed to have fallen into the community of acquets and gains, and this presumption is not rebuttable. * * *." (Citations omitted.)
However, there are exceptions to the double declaration rule. These exceptions are: (1) partition sales; (2) exchanges; (3) changes of ownership following incorporation during the marriage of what was formerly a partnership interest which belonged to the husband's separate estate; and, (4) sale-resale transactions, which are actually security transactions.
The sale from the sisters to defendant was by authentic act, and when considered with the affidavits of the sisters that no consideration was received, and the fact that they intended to place the property back into the defendant's name, we feel that the actual transaction was a donation although styled a cash sale. All of the requisites for a donation were present in the instrument. The sale itself showed an inadequate consideration without an acceptable explanation of the other valuable consideration received. Since the transaction from the sisters to defendant was a donation, the property became his separate property, plaintiff acquired no interest in same, and the presumption that *458 the property was community was rebutted. See Butler v. Butler, 228 So.2d 339 (La. App. 1 Cir. 1969).
Did defendant acquire an interest in plaintiff's home by virtue of the deed dated October 26, 1964, from Earl Jones (plaintiff's son) to plaintiff? As the record is incomplete, we cannot decide this phase of the case. The deed allegedly purports to convey an interest in the home for $10.00 and other valuable consideration. Although the deed did not contain a statement that the property was being purchased with the wife's separate funds, she is allowed to introduce evidence to overcome the presumption that the purchase fell into the community. The trial court held that an act of correction was executed on April 20, 1965, signed by Earl Jones and plaintiff and defendant correcting the first deed to cover only the usufruct in favor of plaintiff. Counsel for defendant contends that it would be error for us to consider this act of correction since it does not appear in the record. The transcript shows in the reasons for judgment, that an act of correction was available to the trial court. In the interests of justice, we will remand the case to allow the insertion of the act of correction in the record.
The next issue deals with the enhancement of the separate estate of the plaintiff. There appears in the record testimony from two real estate experts that some $2,300.00 in improvements were added to the house. It is uncontradicted that these improvements were made with community funds. The trial court, after granting a rehearing on this aspect of the case, held that defendant had failed to prove his claim, citing Succession of Rusciana, 136 So.2d 500 (La.App. 1 Cir. 1961), and Article 2408 of the Civil Code.
Article 2408 of the Louisiana Civil Code provides as follows:
"When the separate property of either the husband or the wife has been increased or improved during the marriage, the other spouse, or his or her heirs, shall be entitled to the reward of one half of the value of the increase or ameliorations, if it be proved that the increase or ameliorations be the result of the common labor, expenses or industry; but there shall be no reward due, if it be proved that the increase is due only to the ordinary course of things, to the rise in the value of property, or to the chances of trade."
The court, in Succession of Rusciana, supra, stated the rule of law regarding the method of determining the enhancement of separate property correctly as follows:
"In interpreting LSA-R.C.C. Article 2408, the courts of this state have evolved jurisprudence holding in essence that where the separate property of a partner in community is shown to have been improved at the common expense, the compensation due the other is determined not by adding the improvements separately to the value of the land but by deducting from the actual value of the land as it existed on the date of dissolution of the community the value it would have had at the time had it not been so improved. * * *."
But, the court then went on to require the ascertainment of the value of the separate property of the other spouse at the commencement of the community, and when this value could not be obtained, the claim for the enhanced value was denied. We feel that practicality dictates a change from this stringent proof, and such an interpretation in effect renders the provisions of Article 2408 virtually useless. Where the value of the separate property of the spouse at the commencement of the community is able to be established, it would be a good starting place in helping to determine the actual enhancement. But, where it is not readily ascertainable, we feel the way to calculate the enhancement is by the rule, i. e., to deduct from the actual value of the land as it existed on the date of dissolution of the community the *459 value it would have had at that time had it not been so improved.
In Gregory v. Gregory, 223 So.2d 238 (La.App. 3 Cir. 1969) this Court held that where it was shown that community funds were expended to repair a building belonging to the separate estate of one of the spouses, the other spouse was entitled to recover one-half of the repair expenditures.
In the case before us there was ample testimony from two real estate appraisers substantiating the fact that the improvements to the separate estate had enhanced the value of the house by $2,300.00. No testimony was introduced to controvert this fact. As we have remanded that portion of the case dealing with whether or not defendant acquired an interest in plaintiff's home, we must await the results of the remand before we can calculate the exact amount of the indebtedness of plaintiff's separate estate to defendant.
The last issue for determination is the amount of attorney's fees to be awarded counsel for plaintiff. The trial court awarded the sum of $350.00 to plaintiff. We feel that in view of the work performed in this case by counsel for plaintiff, the attorney's fees should be increased to the sum of $750.00.
For the reasons assigned the judgment of the district court is reversed in the following respects:
(1) By decreeing Otto M. Owens to be the owner of the following described property, to-wit:
That certain tract of land, together with all buildings and improvements thereon situated and located in Natchitoches Parish, Louisiana, and being more particularly described as the Southeast Quarter of the Southeast Quarter (SE¼ of SE¼) of Section 18, and the West Half of the West Half (W½ of W½) of the Northwest Quarter of the Northeast Quarter (NW¼ of NE¼) of Section 20, all in Township 6 North, Range 4 West.
(2) By decreeing that plaintiff's separate estate is indebted to defendant, the exact value of which is to be determined after remand, and the exact interest of plaintiff in the home is computed.
The judgment of the district court is amended to increase the award of attorney's fees for plaintiff's counsel to the sum of $750.00.
This case is remanded for the specific purpose of inserting the act of correction in the record.
Assessment of costs to await final determination of the case.
Reversed in part, amended in part, affirmed in part and remanded.
HOOD, Judge (dissenting).
I am unable to agree with the majority that defendant Owens is the sole owner of the entire 50-acre tract of land which he sold to his brother in 1968. I believe that the trial judge was correct in holding that plaintiff, Mrs. Margie Jones Owens (now Mrs. Longlois), is the owner of an undivided interest in that tract.
Prior to July 3, 1968, defendant owned the above mentioned tract of land, and it constituted a part of his separate estate. He sold that entire tract to his brother, Dewitt Owens, by a cash warranty deed dated July 3, 1968. The vendee in that deed died on July 29, 1968, leaving as his sole surviving heirs two sisters, defendant Otto Owens, and a half-brother named Clay Owens.
Defendant's two sisters executed a cash deed, dated August 28, 1968, purporting to sell and convey to defendant their undivided interest in that 50-acre tract. The deed recites that the only interest which the vendors conveyed to defendant by that deed was the interest which they inherited from their deceased brother. The record indicates that they inherited an undivided 14/24 interest in the property, and that they conveyed that interest to defendant Owens. *460 The half-brother, Clay Owens, apparently has never sold or conveyed his interest in the property to defendant.
Defendant Owens claimed in the trial court, and he contends here, that the entire 50-acre tract is his separate property. He bases that claim solely on the ground that the cash warranty deed which he executed on July 3, 1968, purporting to convey the entire 50-acre tract to his brother, Dewitt Owens, was a fraudulent simulation, that it was executed and recorded merely for convenience, that the deed thus is null and void, and that the 50-acre tract is still owned by defendant as a part of his separate estate.
The trial judge rejected defendant's argument, and held that the undivided 14/24 interest in the tract which defendant acquired from his sisters became a part of the community, and that plaintiff is entitled to be recognized as the owner of onehalf that interest. The judgment erroneously decrees that plaintiff is the owner of the entire 14/24 interest, but I think it is clear that the court meant to recognize her as owner of one-half that undivided interest, or as owner of a 7/24 interest in the whole of the 50-acre tract.
When the case came up before us, the only argument presented by defendant Owens in support of his demands was that the deed which he executed in favor of his brother, Dewitt Owens, was a simulation, and thus it was null and void. My colleagues ignored that argument, and instead they reversed the trial judge and rendered judgment for defendant on grounds which were not alleged or argued by either party to the suit. The majority, apparently conceding that Owens cannot attack an act of sale which he voluntarily executed on the grounds that it is a fraudulent simulation, have held that the deed executed by defendant's two sisters on August 28, 1968, was a donation in disguise, rather than a cash sale, and that the undivided interest acquired by defendant through that instrument became a part of his separate estate. I think the majority has erred in reaching that conclusion.
First, I do not feel that the issue is before this court of whether the deed from defendant's two sisters is a donation in disguise, rather than a deed. There are no allegations to that effect in the pleadings, no such issue was presented to and determined by the trial court, and no arguments to that effect were presented on appeal.
If the pleadings filed by defendant Owens can be regarded as an attack on the deed which he executed in favor of his brother or the deed executed by his two sisters, then such pleadings, at best, would have to be construed as constituting a collateral attack on these deeds. I believe the question of whether the deed from defendant to his brother is void, or whether the deed from his two sisters should be decreed to be a donation instead of a sale, are issues which can be presented only by a direct action to annul or to reform the documents. I do not feel that the majority should have permitted this collateral attack, even if the pleadings could be interpreted as presenting such an issue.
Second, if the issue as to the validity of either of these two deeds is before us, then it appears to me that a valid judgment cannot be rendered by this court because of a lack of proper parties. The record shows that Dewitt Owens was survived by two brothers and by two sisters. One of the brothers is defendant, Otto Owens, and the other brother is Clay Owens. The two sisters conveyed the interest which they inherited to defendant, but so far as the record shows Clay Owens has never sold or conveyed his interest to defendant or to anyone else. Neither Clay Owens nor the two sisters have been made parties to this suit, which has resulted in a judgment decreeing defendant Otto Owens to be the sole owner of the 50-acre tract of land.
I think Clay Owens and his two sisters should have been made parties to this suit, if we are to consider it as an action to annul *461 the deed by which they acquired undivided interests in the 50-acre tract of land. The two sisters should have been named as party defendants, if the pleadings are to be construed as an action to reform the deed which they executed conveying the land to Otto Owens. And, certainly, Clay Owens should have been made a party defendant if a judgment is to be rendered by this court decreeing Otto Owens to be the sole owner of the 50-acre tract of land, although Clay Owens has record title to an undivided interest in that tract.
Finally, I feel that defendant Owens is precluded from attacking the validity of the deed by which he conveyed the 50-acre tract to his brother, or the deed by which he re-acquired an undivided interest in that property from his two sisters.
In the absence of allegations of fraud or error, conditions and stipulations beyond those expressed in an authentic act can be proved only by a counter-letter or by the use of interrogatories on facts and articles. Weysham v. Aiavolasiti, 227 So.2d 798 (La.App. 4 Cir. 1969); Smith v. Bell, 224 La. 1, 68 So.2d 737 (1953); LSA-C.C. arts. 2236, 2276. There are no allegations of fraud or error in the instant suit, except that defendant Owens alleges that he is entitled to have the deed from him to his brother annulled because he himself attempted to simulate a sale "for convenience." No counter letters have been produced, and no interrogatories or facts and articles have been used.
At the trial affidavits executed by defendant's two sisters were introduced in evidence. Each of these affidavits stated, in substance, that to the best of the affiant's belief the deed from defendant to DeWitt Owens was a simulation, and that both of the sisters conveyed their interests in the property back to defendant without the payment of any consideration, because they considered him to be the owner of the property. Defendant Owens relies heavily on these affidavits. He argues that the affidavits were introduced in evidence by plaintiff, and that plaintiff thus is bound by them. I find no merit to that argument, and it appears that my colleagues also have found no merit to it. These affidavits tend to show that the deed from defendant to his brother was a simulation and thus is null and void. The majority has not annulled that deed. As I understand the majority opinion, my colleagues hold that title to the 50-acre tract actually was transferred to DeWitt Owens, that the property was inherited by the latter's brothers and sisters, and that the sisters donated their undivided interests to defendant. The statements contained in the affidavits thus appear to have been rejected by the majority.
Defendant has executed and recorded two authentic acts reciting sales of the property in question, each for a stated consideration. Our Civil Code attaches some sanctity to these authentic acts. LSA-C.C. arts. 2236 and 2276. I do not feel that he should be permitted now to vary the terms of those acts for his own benefit, particularly where he acknowledges that he intended for the acts to be fraudulent simulations and where the rights of his partner in community are to be adversely affected. Hooper v. Miller, 12 La.App. 9, 125 So. 77 (La.App. 1 Cir. 1929).
In my opinion the majority has erred in reversing the trial court and in holding that defendant Owens is the sole owner of the entire 50-acre tract.
I also am unable to concur in some of the observations made by the majority relative to defendant's claim for enhancement in value of his wife's separate property. Since the matter is being remanded for additional evidence as to that question, however, I will pretermit a discussion of that issue.
For the reasons herein assigned, I respectfully dissent.