400 So.2d 1096 (1981)
Mildred Crockett DELIBERTO
v.
Charles Joseph DELIBERTO, Sr.
No. 13866.
Court of Appeal of Louisiana, First Circuit.
April 13, 1981.
*1097 L. B. Ponder, Jr., Amite, and Frank Koles, Greensburg, for plaintiff.
John D. Kopfler, Hammond, for defendant.
Before LOTTINGER, EDWARDS and PONDER, JJ.
EDWARDS, Judge.
On February 24, 1977, plaintiff, Mildred Crockett Deliberto, brought suit against her husband, Charles Joseph Deliberto, Sr., seeking a separation from bed and board and, among other things, a partition.
Following trial, judgment was signed decreeing certain Tangipahoa Parish real estate, recorded in the name of defendant, to be his separate property. On that property stood the home of the parties, constructed during the existence of the community of acquets and gains. The trial court held that Charles Deliberto's separate estate was indebted to the community in the amount *1098 of $3,264.44, the enhanced value of defendant's separate property.
Asserting that the enhanced value had been set too low, plaintiff applied for a new trial. Over defendant's objection, a new trial was granted solely for the purpose of determining enhanced value.
At the new trial, plaintiff's expert appraiser testified that the enhanced value of defendant's property was $40,830.87. Defendant's expert calculated the enhanced value of the property at $32,920.00, but maintained that since, in his opinion, the highest and best use of the property was commercial, the house had no value whatsoever as an enhancement.
Finding that there had been an increase or improvement to defendant's separate property despite the presence in the area of a number of commercial establishments, the trial court accepted the appraisal of defendant's expert and fixed the enhanced value at $32,920, subject to a credit of $6,500 for the down payment made by defendant with separate funds and subject to a further credit for all payments made by defendant since February 24, 1977, the date of separation. Defendant appeals.[1] We affirm.
Appellant specifies that the trial court erred in 1) allowing a new trial and 2) finding the enhanced value of defendant's separate property to be $32,920.

I. NEW TRIAL
Appellant claims that plaintiff had, at the first trial, the opportunity to introduce evidence of enhanced value and that, by allowing a new trial, the district court gave plaintiff "a `second bite' at the apple."
LSA-C.C.P. Art. 1973 provides that a new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law. A trial court has virtually unlimited discretion to order a new trial, even on its own motion, when it is convinced that a miscarriage of justice has resulted, Renz v. Texas & Pacific Railway Company, 138 So.2d 114 (La.App. 3rd Cir. 1962), and unless an abuse of discretion can be demonstrated, a trial court's action in granting or denying a new trial on discretionary grounds will not be reversed. Simas v. Hicks, 381 So.2d 949 (La.App. 3rd Cir. 1980).
The trial court specifically found, after a contradictory hearing, that there was "good ground for" granting a new trial. Since appellant did not, as was his duty, provide either a transcript or narrative of the contradictory hearing, we can only follow the presumption that the trial court's judgment was supported by competent evidence and should be affirmed. DeLaneuville v. Duplessis, 385 So.2d 385 (La.App. 1st Cir. 1980). We cannot, therefore, find that it was manifest error for the trial court to grant a new trial.[2]

II. ENHANCED VALUE
It is urged that the trial court committed manifest error in finding the enhanced value of appellant's separate property to be $32,920. Three bases for this contention are offered:
1. the purported improvement failed to enhance defendant's property in any manner whatsoever,
2. there was insufficient evidence from which the trial court could find any enhanced value, and
3. the enhanced value as found was calculated improperly.
*1099 Appellant's claims raise the issues of burden of proof, evidentiary procedure, the limits of reimbursement and manifest error. Because the case law is unclear, we deem it necessary to review the jurisprudence.
The codal law applicable to the instant case is LSA-C.C. Art. 2408 which, prior to January 1, 1980,[3] provided:
"When the separate property of either the husband or the wife has been increased or improved during the marriage, the other spouse, or his or her heirs, shall be entitled to the reward of one half of the value of the increase or ameliorations, if it be proved that the increase or ameliorations be the result of the common labor, expenses or industry; but there shall be no reward due, if it be proved that the increase is due only to the ordinary course of things, to the rise in the value of property, or to the chances of trade."
Article 2377 of the Civil Code of 1825,[4] similar to and the predecessor of C.C. 2408, was unfortunately bereft of any formula for determining enhancement. The task for fashioning a procedure thus fell to the judiciary with the end result being a body of conflicting and unclear decisions.
Babin v. Nolan, 4 Rob. 278 (1843), held that an estimate should be placed on the value of the separate property if it were unimproved at the time of marriage or that an estimate should be made of the value at the time of dissolution, but if possible, as the property stood at the time of marriage (i. e., with or without improvements). The value with all improvements at dissolution of the community was then to be found and half the difference was owed to the spouse seeking reimbursement.
After remand, the apparent choice of initial valuations led the lower court in Babin into error. A return to the Supreme Court was necessitated. Finding that the lower court had incorrectly determined enhancement by the difference between the value at marriage and after dissolution rather than by the difference between what the property would have been worth, if unimproved, at dissolution and its actual, improved value at dissolution, the Supreme Court, in Babin v. Nolan, 6 Rob. 508 (1844), set forth four questions to be asked:
"First. What was the condition of the property at the time of the marriage? Second. What would be the value of such property at the dissolution of the community, in the state in which it was at the time of the marriage? Third. What was the real value of the said property, with all the improvements existing thereon, in the condition in which it was at the time of the dissolution of the community? Fourth. What is the difference between the two estimates?"
Babin ultimately returned to the Supreme Court and, in Babin v. Nolan, 10 *1100 Rob. 373 (1845), the court, while noting that the community was not to be repaid for the cost of improvements but for the enhancement,[5] addressed the problem of conflicting estimates. Finding that the "evidence is so confused and unsatisfactory, that there is the greatest difficulty, if not an impossibility, of ascertaining precisely the difference in value," the court accepted the testimony of all witnesses "notwithstanding their inconsistencies and exaggerations" and simply used the average of all values given.[6]
The Supreme Court, in Abraham v. Abraham, 230 La. 78, 87 So.2d 735 (1956), settled the problems of what amount of community labor, expenses or industry must be expended on separate property before reimbursement must be paid and who must bear the burden of proof in reimbursement cases. The court held that "if either husband or wife substantially contribute to the amelioration of the separate property of one of them during the marriage," reimbursement was owed.
Regarding burden or proof, the court was explicit:
"when it is shown that community labor, expenses or industry has provided an increase to the separate property, the burden shifts to the owner of the separate property to rebut this proof and affirmatively establish that the increase is due only to the ordinary course of things, rise in values or chances of trade." 230 La. 78, 87 So.2d at 739. Emphasis by Supreme Court.
Although the burden of proof rule laid down in Abraham is clear and based on the presumption that at the dissolution of a marriage all effects possessed by husband and wife are presumed communal,[7] said rule has been misconstrued on numerous subsequent occasions.
In Ruffino v. Hunt, 234 La. 91, 99 So.2d 34 (1958), separate property was purchased in 1936 for $5,450. Its value in 1955 was $36,090. Nevertheless, the community was only reimbursed $6,519.38, the amount actually spent, since "there was no proof showing that the enhanced value of the separate estate resulted from other expenditures of community funds." Misinterpreting Abraham, the court stated that defendant, seeking reimbursement for the community, had not shown "the amount of enhanced value which is attributable to the improvements rather than the general increase in real estate value."
In Succession of Rusciana, 136 So.2d 509 (La.App. 1st Cir. 1961), the court established procedural rules requiring a spouse seeking reimbursement to the community to prove:
1) that there was enhancement of the separate property,
2) that the enhancement was made with community funds or resulted from the spouses' joint industry, expense or labor,
3) the value of the separate property at the commencement and dissolution of the community, and
4) that the enhancement did not result in the ordinary course of events or due to the property's normal rise in value or the chance of trade.
To the extent that Rusciana (1961) ignores the clear dictates of Abraham and attempts, in item four, to shift the burden *1101 of proof as to the reason for enhancement, it is incorrect and will not be followed.
Other cases failing to adhere to Abraham include Fontenot v. Fontenot, 339 So.2d 897 (La.App. 3rd Cir. 1976), writ denied 342 So.2d 217 (1977), and Succession of Hotard, 248 So.2d 30 (La.App. 1st Cir. 1971).
In Owens v. Owens, 259 So.2d 454 (La. App. 3rd Cir. 1972), Rusciana (1961) was criticized on another ground. The court in Owens saw no need to require a spouse representing the community to prove the value of the other spouse's separate property at the community's inception or suffer denial of the community claim. Such an initial value might be helpful but, where not readily ascertainable, it could be dispensed with. In such a case, enhancement was to be determined by deducting "from the actual value of the land as it existed on the date of dissolution of the community the value it would have had at that time had it not been so improved."[8]
In summary, a party seeking reimbursement to the community need satisfy only the requirements of Babin v. Nolan (1844), supra. Once that has been done, the party opposing reimbursement must, as required by Abraham prove that the enhancement was due only to the ordinary course of things rise in values or chances of trade, failing which the entire enhancement is owed to the community. It is an all or nothing proposition.
In determining the amount of enhancement, any reasonable method may be used, even, in difficult cases, to the extent of averaging the conflicting and exaggerated estimates of witnesses. Babin v. Nolan (1845), supra.
In the present case, appellant notes that his property expert was more experienced than appellee's and urges that, on that basis, testimony to the effect that the family domicile did not enhance appellant's separate property, should be controlling.
This line of reasoning ignores the fact that appellant's expert also testified that in February of 1977, at the time of dissolution of the community, appellant's separate property was worth $7,880 and had on it a structure, the family domicile, worth $32,920.
The trial court accepted the figures given by appellant's expert but rejected his contention that the separate property had not been enhanced. A review of the record discloses no conclusive proof that the highest and best use of the property would be commercial. A number of residences as well as commercial establishments were shown to be in the area.
The district judge considered all the facts, found enhancement and utilized the figures given by appellant's expert. We agree with the trial judge's conclusions.
Appellant argues that the trial court erroneously utilized the amount expended by the community rather than correctly determining enhancement. This is not so. The district judge ascertained that the unimproved separate property of appellant was worth $7,880, that, as improved, the property was worth $40,800, and that the separate property had been enhanced by $32,920 through the construction of a home. Under Babin v. Nolan (1844), this was all that was necessary. It was not error, as urged by appellant, for the trial court to then substract appellant's down payment made with separate funds. To do so was merely to credit defendant for his expenditure of separate funds. Nor was it error for the trial court not to determine the original value of appellant's separate property. That determination, called for by Succession of Rusciana (1961), supra, is unnecessary to calculate enhancement and is not required by Babin v. Nolan (1844), which controls.
Appellant's objection that plaintiff failed to show that the enhancement was not *1102 caused by the ordinary course of events is useless since Abraham v. Abraham, supra, places this burden of proof on the party seeking to deny reimbursement, in this case, appellant, who has failed to shoulder his burden.

III. ENHANCEMENT LIMIT
Not raised in brief by appellant is the question of whether a community may, in fact, ever be reimbursed for more than the actual sums expended on behalf of the separate property. Article 2408 includes no statutory limitation of recovery. Two old cases, however, Depas v. Riez, 2 La.Ann. 30 (1847), and Succession of McClelland, 14 La.Ann. 762 (1859), stand for the proposition that
"Whatever be the present value of the improvements, the recompense due the community for them cannot exceed their costs." 2 La.Ann. 30 at 44.[9]
Scholarly notice[10] has been taken of this jurisprudential limitation on reimbursement. The rule's ostensible justification has been that during the community's existence, the community either benefits from the use of, or enjoys the profits from, the enhanced separate property.
There are two major flaws in the logic of Depas. First, in the event that the separate property is enhanced but is neither income producing nor used by the community, all defense of the rule as equitable must fall. Second, Art. 2408 admits of no limitations on reimbursement.
In Winston v. Winston, 130 So.2d 165 (La.App. 2nd Cir. 1961), the court noted the apparent conflict between early cases limiting reimbursement and subsequent cases failing to even note such a rule, but decided it did not have to resolve the conflict.
A decision clearly contrary to the rule of Depas was Palama v. Palama, 323 So.2d 823 (La.App. 4th Cir. 1975), writs denied 326 So.2d 381 (two cases) (1976). In Palama, $15,000 in community funds were used to construct improvements on the husband's separate property. Insurance on the improvements was paid for with community funds. When the improvements were destroyed by fire, $25,000 in insurance benefits were paid. The court found that the improvements, although destroyed, had enhanced the separate property by $25,000 and therefore credited the community with all the insurance proceeds,[11] a sum $10,000 greater than that actually spent by the community.
Professor Robert A. Pascal, commenting on Palama in The Work of Louisiana Appellate Courts for the 1975-1976 Term, Matrimonial Regimes, 37 La.L.Rev. 358, 371-372 (1977), noted that
"as long as an `improvement' to a separate asset is made through the expenditure of the spouses' energies or common funds, the owner of the separate asset owes the other spouse one-half the value of the improvement at the moment of the *1103 dissolution of the regime, whether that value is greater or less than the value of the energies or funds originally expended."
Recent commentary, statutory wording, the decisions of Abraham and Palama, and the absence for many years of any case applying the Depas rule, make it evident that the limitation of reimbursement rule laid down by Depas and Succession of McClelland has either been overruled sub silentio or, at a minimum, has fallen into disuse.
That providing for reimbursement unfettered by limitation is the correct position is buttressed by jurisprudence from other community property jurisdictions. Dakan v. Dakan, 125 Tex. 305, 83 S.W.2d 620 (Tex.1935); Pruske v. Pruske, 601 S.W.2d 746 (Ct. of Civ.App. of Tex.1980); Logan v. Barge, 568 S.W.2d 863 (Ct. of Civ.App. of Tex.1978); Cockrill v. Cockrill, 124 Ariz. 50, 601 P.2d 1334 (Ariz.1979); Suter v. Suter, 97 Idaho 461, 546 P.2d 1169 (Idaho 1976); Johnson v. Johnson, 89 Nev. 244, 510 P.2d 625 (Nev.1973).[12]
We conclude that in the present case, the former Deliberto community is to be credited with the entire amount of the proved enhancement$32,920, subject to the appropriate credits to Mr. Deliberto's separate estate.

IV. PRORATED ENHANCEMENT
Appellant's final contention is that, conceding the enhancement value to be $32,920, an apportionment of the increase should be made between the community and appellant's separate estate according to the investment each has made. Because the community investment over the years amounts to only $2,564 while appellant's is $6,500, appellant would be credited with 71.7% of the enhancement, or $23,604, while the community would be left with 28.3% or $9,316.
This contention cannot serve to overcome the clear dictates of LSA-C.C. Art. 2408.
For the foregoing reasons, the judgment appealed from is affirmed. All costs, both trial and appellate, are to be paid by Charles Joseph Deliberto, Sr.
AFFIRMED.
NOTES
[1] Plaintiff answered the appeal seeking to have the higher appraisal of her expert substituted for that adopted by the trial court. Since the answer was filed more than fifteen days after the record was lodged in this court, it will not be considered. LSA-C.C.P. Art. 2133. Mitchell Brothers v. Dinvaut, 374 So.2d 199 (La.App. 4th Cir. 1979), writ denied 376 So.2d 1271 (1979).
[2] As a further ground for sustaining the trial court's action, we note that in other cases involving reimbursement to the community, remand for the taking of evidence has been permitted. Succession of Rusciana, 232 La. 1073, 96 So.2d 1 (1957); Succession of Singer, 208 La. 463, 23 So.2d 184 (1945).
[3] Had the facts operative in the present case arisen subsequent to January 1, 1980, there would be no issue. Article 2408 was repealed effective January 1, 1980, and replaced by Articles 2364, 2366 and 2368. Acts 1979, No. 709. The new article 2366 provides:

"If community property has been used for the acquisition, use, improvement, or benefit of the separate property of a spouse, the other spouse is entitled upon termination of the community to one-half of the amount or value that the community property had at the time it was used."
Under Article 2366, the measure of reimbursement has been changed from one-half the enhanced value to one-half the community funds used. Essentially, the community would be making a potentially long term interest free loan.
It is noteworthy that, for another reason, the present conflict might not have existed after January 1, 1980. LSA-C.C. Art. 491, as of January 1, 1980, would have permitted the spouses to have established ownership of the family domicile separate from the husband's land.
[4] Article 2377 provided:

"When the hereditary property of either the husband or the wife has been increased or improved during the marriage, the other spouse, or his or her heirs, shall be entitled to the reward of one half of the value of the increase or ameliorations, if it be proved that the increase or ameliorations be the result of the common labour, expenses or industry; but there shall be no reward due, if it be proved that the increase is due only to the ordinary course of things, to the rise in the value of property, or to the chances of trade."
[5] That enhancement and not the cost of improvements is the measure of recovery is clear. Abunza v. Olivier, 230 La. 445, 88 So.2d 815 (1956); Succession of Boyer, 36 La.Ann. 506 (1884). Furthermore, minor repairs, particularly including the use of such items as nails, staples, screws, lumber and fence wire, are not to be considered as "improvements of a substantial, permanent character" requiring payment. Courrege v. Colgin, 51 La.Ann. 1069, 25 So. 942 (1899); Succession of Boyer, supra. When, however, repairs made at cost to the community result in enhanced value to separate property (presumably because permanent improvements have been made), reimbursement is owed. Funderburk v. Funderburk, 214 La. 717, 38 So.2d 502 (1949).
[6] Use of the average of all values testified to was again approved in Childers v. Johnson and Smith, 6 La.Ann. 634 (1851). See also Giamanco v. Giamanco, 131 So.2d 159 (La.App. 3rd Cir. 1961).
[7] LSA-C.C. Art. 2405.
[8] Rusciana (1961), by adopting part of the confusing language found in Babin v. Nolan (1843), had actually added the rule criticized in Owens to the basic requirements laid down in Babin v. Nolan (1844), supra. Owens, therefore, constituted no jurisprudential innovation; to the contrary, it was a return to long established law.
[9] In a recent case, Ware v. Ware, 365 So.2d 842 (La.App. 4th Cir. 1978), writ denied 368 So.2d 144 (1979), the court, in allowing the community only the $8,700 it had advanced on the husband's separate property, stated:

"Assuming the property was the husband's separate property, that is the maximum reimbursement for enhancement that La.C.C. 2408 allows."
It is not clear from this statement whether the court meant that the community had failed to prove enhancement beyond $8,700 or whether, regardless of the amount of enhancement, $8,700 was the limit of reimbursement due to the holdings of Depas v. Riez and Succession of McClelland, supra.
[10] Bartke, Yours Mine and OursSeparate Title and Community Funds, 21 Baylor L.Rev. 137, 148-150 (1969); Comment, Reimbursement of the Marital Community, 37 Tulane L.Rev. 506 (1963); Huie, Separate Claims to Reimbursement from Community Property in Louisiana, 27 Tulane L.Rev. 143, 214-217 (1953).
[11] Citing Abraham v. Abraham, supra, the court stated that "recovery is not determined on the basis of the amount expended but is limited to the enhanced value resulting from their expenditures." It is noteworthy that the husband in Palama, failing to prove that the $10,000 increase was due only "to the ordinary course of things, to the rise in the value of property, or to the chances of trade," suffered the consequence of having the entire enhancement credited to the community.
[12] To the extent that Hale v. Hale, 557 S.W.2d 614 (Ct. of Civ.App. of Tex.1977), and Tester v. Tester, 123 Ariz. 41, 597 P.2d 194 (Ct. of App. of Ariz.1979) differ from the prevailing jurisprudence in their respective jurisdictions, we note that both cases were decided by lower courts in the face of Supreme Court decisions not calling for reimbursement limitations.