SARTAIN, Judge.
Velora Agnes Hotard died on July 2, 1965, survived by her second husband, Phebus N. Hotard, two minor children of that marriage, Kenny and Jessica, and by two major children of a prior marriage, Donald Little and Sandra Little Devine.
Phebus Hotard was appointed administrator of the succession and caused an inventory and a schedule of debts to be prepared and filed. Donald Little and Sandra Little Devine caused an amended inventory to be filed for the purpose of reevaluating forty-two shares of stock in the Winbourne Shopping Center, Incorporated, and they also filed a rule to show cause why certain items on the schedule of debts should not be allowed. Mr. Ho-tard also filed a rule to traverse the amended inventory.
After a hearing on these rules, judgment was rendered upholding the amended inventory as to the value of the stock and disallowing certain disputed debts listed on the schedule of debts. The heirs and surviving spouse were sent into possession in the same judgment. Later, Mr. Hotard’s motion for a new trial based on allegedly new evidence as to the value of the stock was denied and he perfected this appeal.
The trial judge accepted the testimony of two appraisers who valued the stock at $74,228.70 in upholding the amended inventory. The judge disallowed a debt of $12,000.00 claimed by Mr. Hotard as arising from advances of cash made to him by his father over a period of years and represented by a collateral mortgage on the home owned by him and the decedent in that amount. Mr. Hotard also claimed as a debt to his separate estate an amount representing the purchase price of certain immovables which he said were brought with his separate funds during the marriage. The trial judge did not mention this claim in the reasons for judgment but since it was not included in the enumerated debts that were allowed in the judgment it must be considered as disallowed.
Mr. Hotard further claimed as a debt to his separate estate the proceeds from a sale of separate property, which proceeds were eventually invested in community property. He had made a down payment of $1,619.78 on a house and lot prior to marriage and assumed a mortgage for $7,630.22, the purchase price being $9,250.00. He later sold the property for $13,000.00 and invested the proceeds in another house and lot. The trial judge only allowed a claim for the amount of the down payment, $1,619.78.
Mr. Hotard has appealed those rulings and also asserts error in the denial of a new trial. He further contends that, inasmuch as the inheritance tax collector has never assessed the taxes or stated that none are due the judgment purporting to send the heirs into possession is null and void.
We affirm the rulings relative to the amended inventory, the denial of a new trial and the disallowance of the alleged debt represented by the mortgage and of the alleged debt for reimbursement for the price of immovables purchased during the marriage. We amend the ruling relative to the claim for reimbursement for the proceeds from the sale of the property *33 acquired before the marriage. The judgment of the trial court is, however, invalid insofar as it purports to send the heirs into possession before the inheritance taxes have been assessed, but the remainder of the judgment is not nullified thereby, and this matter will be remanded for the limited purposes of assessment and payment of such taxes as may be due and for the rendering of .a judgment of possession thereafter.
The record reveals that Mr. Hotard’s claims for reimbursement arise from two allegations: first, that he had approximately $10,000.00 in bank accounts at the time of his marriage to the decedent in March of 1948, and, second, that his father had from time to time advanced to him various amounts of cash totaling at least $12,-000.00 between 1950 and 1965.
No bank statements were produced to corroborate the first allegation but Mr. Hotard points to other circumstances as evidence that he had separate funds at the time. First, he points to the down payment of $1,619.78 made a few days prior to the marriage and, second, to a purchase of real estate made some seven months after the marriage, in which he paid $700.00 in cash toward a purchase price of $2,100.-00. Another purchase of real estate was made some years later with cash in the amount of $3,500.00. If indeed Mr. Ho-tard had separate funds upon entering into his marriage, these facts do not constitute sufficient proof of the amount thereof or how he expended such funds. There is nothing to corroborate his testimony that his funds were not previously commingled with community funds or that community funds were not used for the purchases of the real estate. In the absence of such proof, as is required by La.Civil Code Art. 2334 in defining separate property, that provision and La.Civil Code Art. 2402 require the finding that the property acquired during the marriage was acquired with community funds and falls into the community, and therefore no reimbursement may be allowed. Messersmith v. Messersmith, 229 La. 495, 86 So.2d 169 (1956).
The property on which Mr. Ho-tard made the down payment prior to marriage became and remained his separate property. But for the same reasons discussed above, the remaining payments made during the marriage must be presumed to have been made with community funds and the community has a claim for all such payments. Pennison v. Pennison, 157 So.2d 628 (4th La.App., 1963, writs granted on other grounds). However, when that property was sold in 1959 for $13,000.00, Mr. Hotard’s separate estate was entitled to receive the benefit of the enhanced value over the original purchase price of $9,250.00. There was no proof that the increase in value was the result of common labor, expenses or industry; rather, it appears to have been the result of an ordinary rise in property value and La.Civil Code Art. 2408 provides that the separate estate receives a benefit of that nature. When the proceeds of that sale were then invested in a second home, it is clear that Mr. Hotard invested separate funds in the amount of $5,369.78, representing the amount of the down payment and the amount of the increased value. Therefore, the judgment of the trial court is amended to include in Mr. Hotard’s claim for reimbursement the amount of the increase in value of his separate property.
Mr. Hotard’s testimony that his father over a period of years had advanced to him a total of at least $12,000.-00 in cash is also uncorroborated. No records of the dates or amounts of these alleged cash advances were kept. Due to ill health, his father was unable to testify as to the validity of this claim. The collateral mortgage had first been executed to American Bank and Trust Company for a loan in 1961. When Mr. Hotard paid off the note secured by that mortgage, he said he gave the mortgage to his father to cover the previous advances. However, *34 under these circumstances, we must agree with the trial judge that the debt has not been sufficiently proved and the claim cannot be allowed. The same conclusion was reached on similar facts in Azar v. Azar, 185 So.2d 113, 118 (4th La.App., 1966).
The valuation of the forty-two shares of stock in Winbourne Shopping Center, Inc., was first fixed at $4,200.00, but the appraisers admitted that they only used the recited par value of $100.00 in making that estimate. A second appraisal was made at the request of Donald Little and Sandra Little Devine, appellees herein, and with directions from the trial judge to ascertain the fair market value of the stock as of July 2, 1965, the date of the decedent’s death. It was found that the sole assets of the corporation were 23.76 acres of land and a service station lease thereon in the City of Baton Rouge. Two appraisers working independently but then confirming their results with each other appraised the value of the land at $17,500.-00 per acre, or a total of $415,000.00, and the value of the lease at $60,000.00. The only debt was found to be a mortgage obligation amounting to $29,623.71, leaving the net value of the property at $445,376.29. The forty-two shares represented a one-sixth interest in the corporation, which was a small, closely held corporation. The appraisers testified that under these circumstances the value of the stock and the value of the interest in the real estate represented by the stock were virtually the same. The trial judge relied on this testimony to fix the value of the stock at $74,228.70. In response to questions on other factors which might affect the true value of the stock, such as availability of a willing buyer, restrictions on use of the land under the articles of incorporation, expenses which would be incurred in a sale or an outstanding option to buy only a portion of the tract, the appraisers said that their valuation would not be significantly affected by such considerations. No experts were called to rebut their testimony on these points and we are of the opinion that the acceptance of these views by the trial judge was justified.
The application for a new trial was based on allegations of newly discovered evidence relative to the value of the stock. It was alleged that since the date of the judgment, August 29, 1969, another stockholder had sold a similar interest for only $28,000.00. It was further alleged that a suit had been filed by the vendors of the land sold to the corporation seeking to rescind the sale. Although this evidence may have been newly discovered, we fail to see how it would affect the fair market value of the stock more than four years earlier at the time of decedent’s death. The refusal to grant the new trial was not error in our opinion.
That portion of the judgment which purported to send the heirs into possession was prematurely rendered. La. Code of Civil Procedure Articles 2951, 3061 and 3381 require proof that inheritance taxes have been paid or that none are due or that the amount claimed by the tax collector has been deposited in the registry of the court before a judgment of possession may be rendered. In the instant case, no taxes were assessed because of the disputes over the property belonging to the succession and the value thereof. However, only that portion of the judgment is invalid. Therefore, this matter is remanded for the limited purposes of assessment and payment of such taxes as may be due and of rendering a judgment of possession thereafter, all in accordance with the views expressed in this opinion.
Accordingly, the judgment appealed from insofar as it pertains to the amended inventory is affirmed; the judgment of the trial court relating to the itemized list of debts is amended to increase the obligation owed by the community to the separate estate of Phebus Hotard from $1,619.78 to the sum of $5,396.78, in all other respects the judgment is affirmed; *35 the judgment of the district court placing the surviving spouse and heirs of the decedent in possession of their respective interests in the property and estate of the decedent is reversed and set aside and this matter is remanded to the district court for the limited purpose of satisfying the claims of the inheritance tax collector as a condition to any judgment by the court placing the surviving spouse and heirs in possession. The cost of this appeal is to be paid by the estate and succession of Velora Agnes Hotard.
Affirmed as amended, reversed in part and remanded.