KATHY K. FARMER, Petitioner Below-Appellant,
v.
STEVEN C. FARMER Respondent Below-Appellee.
No. 442, 2008.
Supreme Court of Delaware.
Submitted: January 27, 2008.
Decided: April 21, 2009.
Before BERGER, JACOBS, and RIDGELY, Justices.

ORDER
HENRY DuPONT RIDGELY, Justice
This 21st day of April 2009, it appears to the Court that:
(1) Petitioner-Appellant Kathy K. Farmer ("Wife") appeals from the Family Court order resolving ancillary issues incident to the divorce of Wife and Respondent-Appellee Steven C. Farmer ("Husband").[1] Wife makes two arguments on appeal. First, she contends that the court abused its discretion by awarding Husband a portion of Wife's premarital residence. Second, she contends that the court erred when it ordered Wife to pay a portion of Husband's 2005 tax liability. We find no merit to her arguments and affirm.
(2) Husband and Wife were married on April 16, 2005, separated on January 3, 2006, and divorced on March 6, 2007. The marital estate in dispute includes a premarital residence, purchased by Wife in May 2002. The parties lived in this home for approximately twenty-eight months prior to the marriage and for eight months as Husband and Wife before separating. At the time the marriage began, the value of the home was $184,000, with a mortgage on the property in the amount of $93,134. At the time of separation, the home had increased in value to $205,000 and the mortgage had decreased to $89,134.
(3) During the ancillary hearings regarding property division, Husband testified that he made substantial contributions to Wife's premarital residence during the marriage.[2] Wife contradicted Husband's testimony and claimed that Husband made almost no contribution to the house during the parties' marriage. Wife testified that she worked full time, did most of the cooking, did the cleaning and the laundry, shared in the grocery shopping and manually paid the bills during the marriage. Among these bills, Wife testified that she paid the mortgage using her personal Delaware National Bank account.[3]
(4) Although the parties were married in April 2005 and resided together for the entire 2005 tax year, Husband and Wife filed separate tax returns for 2005. Husband's tax liability for 2005 includes a total of $8,535 owed in federal taxes and $1,089 owed in state taxes. There is no record of Wife's 2005 tax liability.
(5) After an evidentiary hearing, the Family Court entered an Ancillary Order dividing the parties' marital estate 50% to Wife and 50% to Husband.[4] In that order, the court determined that Husband had a right to an equitable portion of the increase in value of Wife's premarital residence. It also required Wife to pay a portion of Husband's 2005 tax liability, reasoning that "Wife provided no legitimate reason why the Court should hold Husband solely accountable for debt related to income from which she benefited."[5]
(6) Our "standard and scope of review of an appeal from the Family Court extends to a review of the facts and law as well as to a review of the inferences and deductions made by the Trial Judge."[6] Where the court's decision implicates a ruling of law, we review the court's determination de novo.[7] If the Family Court applied the law correctly, we review for an abuse of discretion.[8] We will not disturb the trial judge's findings of fact "where those inferences are supported by the record and are the product of an orderly and logical deductive process."[9] We have repeatedly emphasized that the Family Court has broad discretion under Title 13, Section 1513 to divide marital property.[10]
(7) The division of marital property under Delaware law is governed primarily by the application of Section 1513. Under this statute, and "upon request of either party," the Family Court must "equitably divide, distribute and assign the marital property."[11] The party making the request has the burden of proving by a preponderance of the evidence the reasons why the marital property should be so awarded, to whom, and the value to be assigned.[12] There is a presumption that all property acquired subsequent to the marriage is marital, regardless of title.[13] This presumption may be overcome, however, by a showing that the property falls into one of the four exclusions outlined by Section 1513(b).[14]
(8) In Albanese v. Albanese,[15] we addressed Section 1513(b)(4), which excludes "[t]he increase in value of property acquired prior to the marriage" from marital property. Recognizing that the acquisition of property is often an "ongoing process of continuing valuation," we concluded that the "characterization of property as nonmarital or marital depends upon the source of each contribution as payments are made, rather than the time at which legal or equitable title to or possession of the property is obtained."[16] Accordingly, we adopted a three-step process for "fixing spousal entitlement to property which reflects a mix of premarital and marital acquisitions."[17] This process involves the following steps:
(1) fix the ratio of the nonmarital interest to the total nonmarital and marital investment
(2) subject the marital portion to equitable distribution
(3) in making the equitable distribution, determine the monetary and nonmonetary contributions of each spouse, and the effort expended by each spouse in accumulating the marital property.[18]
(9) Wife contends that the Family Court should not have applied Albanese due to the short duration of the marriage. She argues that "in marriages of short duration, the Court's goal is to return the parties to the position that they were in prior to the marriage." First, Albanese is intended to apply when the court "allocate[s] spousal shares in real property purchased and paid for in part before marriage and in part during marriage through the use of nonmarital and marital funds."[19] In this case, Wife's premarital property was purchased and paid for, in part, prior to the marriage and with Wife's nonmarital funds. As the trial judge reasoned, "once the parties married, Wife's income became marital. Therefore, Wife was using marital income [from her personal Delaware National Bank account] to pay the mortgage ... during the marriage."[20] Consequently, the Family Court's use of the Albanese process was proper because the home reflected a mixture of premarital and marital acquisitions. Secondly, contrary to Wife's assertions, the record supports the trial judge's factual determination that both Husband and Wife contributed equally to the acquisition of the premarital residence during the marriage.[21] Third, the Albanese process takes into consideration Wife's nonmarital interest, thereby "returning her to the position that she was in prior to the marriage," plus providing her with an equitable portion of the martial investment. Moreover, the trial judge explicitly took into consideration the short duration of the marriage as required under Section 1513(a)(1), prior to dividing the marital estate. Consequently, the Family Court did not err by awarding Husband a portion of the increase in value of Wife's premarital property.
(10) Wife also submits that "the Court Below, in determining Husband's interest, apparently took the increase in the equity of the property from date of marriage until date of divorce and awarded Husband 50% of that increase. The Court Below however failed to take into consideration the increase that accrued on Wife's premarital investment . . . ." Wife's assertion is inconsistent with the provisions of the decision. The trial judge held that Wife was entitled to retain her premarital equity of $89,866 and an additional $10,245 as a reasonable rate of return on her premarital equity.[22] Only the remaining equity of $22,699 was subject to division.[23]
(11) Wife also contends that the Family Court erred by requiring Wife to pay a portion of Husband's 2005 tax liability. She argues that she "should not have been responsible for 50% of any marital portion of the debt, due to the fact that, in applying the factors as set forth under 13 Del. C. § 1513 and considering Wife's far greater contributions to a very short marriage, the percentage distribution should have been skewed, with Husband assuming a much larger percentage of the 2005 tax liability." Husband argues that the debt is marital, despite the fact that the parties filed separately, because Wife benefited from Husband's income in 2005. The Family Court weighed the evidence and determined the tax debt was marital. The Family Court reasoned, "Wife provided no legitimate reason why the Court should hold Husband solely accountable for debt related to income from which she benefited."[24] This finding by the trial judge was supported by the record and was a product of an orderly and logical deductive process.
NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.
NOTES
[1] Pseudonyms were assigned on appeal pursuant to SUPR. CT. R. 7(d).
[2] Husband claims that, outside of the home, he landscaped and maintained the yard, built a rock wall, installed outside lighting fixtures, repaired the gutters, and installed a chimney cap and re-tarred the chimney. He also claims that inside the home he installed phone, cable and electrical lines, repaired flooring panels, installed molding and baseboards in the kitchen and upstairs bathroom, purchased items for and assisted in the installation of a bathroom in the basement, painted and waterproofed the basement, and repaired the heater and hot water heater.
[3] Wife deposited her income into this account during the marriage.
[4] See Wife (K.K.F.) v. Husband (S.C.F.), Del. Fam., No. CN06-02343, at 1 (Aug. 10, 2008) [hereinafter Ancillary Order].
[5] Ancillary Order at 3, 7.
[6] Jones v. Lang, 591 A.2d 185, 186 (Del. 1991) (quoting Solis v. Tea, 468 A.2d 1276, 1279 (Del. 1983)).
[7] Waters v. Div. of Family Servs., 903 A.2d 720 (Del. 2006).
[8] Jones, 591 A.2d at 186 (citing W. v. W., 339 A.2d 726, 727 (Del. 1975)).
[9] Id. at 187 (quoting Solis v. Tea, 468 A.2d at 1279).
[10] See, e.g., Bothwell v. Bothwell, 877 A.2d 52, 2005 WL 1653619, at *1 (Del. 2005) (Table); Wife (L.R.) v. Husband (N.G)., 406 A.2d 34, 35 (Del. 1979).
[11] 13 Del. C. § 1513.
[12] See DEL. FAM. CT. CIV. R. 52(a)(3)(i).
[13] See 13 Del. C. § 1513(c).
[14] See 13 Del. C. § 1513(b), which provides:

For the purposes of this Chapter only, "marital property" means all property acquired by either party subsequent to the marriage except:
(1) Property acquired by an individual spouse by bequest, devise or descent or by gift, except gifts between spouses, provided the gifted property is titled and maintained in the sole name of the donee spouse, or a gift tax return is filed reporting the transfer of the gifted property in the sole name of the donee spouse or a notarized document, executed before or contemporaneously with the transfer, is offered demonstrating the nature of the transfer.
(2) Property acquired in exchange for property acquired prior to the marriage;
(3) Property excluded by valid agreement of the parties; and
(4) The increase in value of property acquired prior to the marriage.
[15] 676 A.2d 900, 1996 WL 69824, at *2 (Del. 1996) (Table) (quoting 13 Del. C. § 1513(b)(4)).
[16] Id. (quoting Harper v. Harper, 448 A.2d 916, 929 (Md. 1982)).
[17] Id.
[18] Id.
[19] Id.
[20] Ancillary Order at 3.
[21] The trial judge determined that Wife paid for the mortgage on the property using her marital income during the entire marriage, whereas the Husband contributed by making improvements to the property. In addition, the trial judge took into consideration Wife's cooking and cleaning contributions. Ancillary Order at 4.
[22] Ancillary Order at 4.
[23] Id.
[24] Ancillary Order at 7.